USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MIGUEL A. ADAMES, JR.,

                              Plaintiff,                        20-CV-09546 (SN)

                 -against-                      **OPINION & ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      Miguel A. Adames, Jr. seeks review of the decision of the Commissioner of Social Security (the "Commissioner") finding that he was not disabled or entitled to supplemental security income ("SSI") under the Social Security Act (the "Act"). The parties have cross-moved for judgment on the pleadings. Adames's motion is DENIED, and the Commissioner's motion is GRANTED.

BACKGROUND

**I.    Administrative History**

      Adames applied for SSI on January 23, 2018. See ECF No. 17 Administrative Record ("R.") 10, 58. He alleged disability beginning June 13, 2013, due to rotator cuff syndrome of the shoulder, depressive disorder, and backache. R. 10, 60. On May 10, 2018, his application was denied, and he requested a hearing before an administrative law judge ("ALJ") to review his case. R. 10. Adames and his attorney appeared for a hearing before ALJ Brian G. Kanner on October 29, 2019, and he issued a decision denying Adames's claim on December 27, 2019. R.

10-22. On September 17, 2020, the Appeals Council denied Adames's request for review, making the ALJ's decision final. R. 1-6; see 20 C.F.R. § 416.1581; 42 U.S.C. § 405(g).

## II.     Adames's Civil Case

Adames filed his complaint on November 13, 2020, seeking review of the ALJ's decision. See ECF No. 1. He requested that the Court set aside the decision and grant him SSI or, alternatively, remand the case for further proceedings. Id. ¶ 9. The Commissioner answered by filing the administrative record, and the parties cross-moved for judgment on the pleadings. See ECF Nos. 17, 27, 29. Adames argues that the ALJ erred by not finding him unable to perform any overhead reaching, by improperly disregarding his testimony, and by finding he did not require the use of a cane. See ECF No. 28 ("Pl. Br.") at 8, 12, 14. The Commissioner contends that the ALJ's decision was supported by substantial evidence and that Adames did not demonstrate that he is disabled. See ECF No. 30 ("Def. Br.").

The Honorable Paul A. Engelmayer referred this case to my docket and the parties consented to my jurisdiction on February 7, 2022, pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 26.

## III.    Factual Background

Adames does not contest the ALJ's determination regarding his alleged depression. Thus, this summary, and the analysis that follows, focuses solely on his alleged physical impairments.

### A. Non-Medical Evidence

Adames was born in 1975. R. 59. He has completed high school and a semester of college. R. 49, 69. Before his alleged onset of disability, he worked in an auto body shop as a painter. R. 228.

In June 2013, Adames was struck by a car while riding his bicycle. R. 45, 259. He was hospitalized and remained unconscious for several days. Id. He suffered two strokes while in the hospital. R. 452. The accident left him with "residual cognitive deficits with dependent ADL and mobility" issues that led to his admission at Lutheran Medical Center for inpatient rehabilitation on July 17, 2013. See R. 252-306.

At the hearing before the ALJ, Adames stated that he suffered from depression because of lingering physical limitations caused by the accident. R. 41-42. When being sworn in, Adames propped up his right arm. R. 42. He stated that he is right-handed, currently unable to write his name or wash his back, and can lift only six pounds with his right arm. R. 42, 48. He testified that he has chronic back pain and is unable to stand for longer than half an hour. R. 45-46, 54. He is unable to walk more than three blocks and uses a cane to walk most of the time. R. 55. Adames testified that, since his accident, he is unable to use public transportation due to difficulty with stairs and being around lots of people. R. 52. He relies on Medicaid transportation to get to and from his medical appointments. R. 48-49. His girlfriend cleans their home, and his children's mother makes him food every day. R. 45.

Carmen Aguayo, the mother of Adames's children, provided a third-party function report. R. 170-83. She stated that the accident left him depressed and "in very bad shape" and that he sometimes forgets to take his medication. R. 176, 180. She also stated that he has difficulty with memory, completing tasks, and concentration. R. 182. Aguayo stated that he gets tired quickly and can walk only about half a block before needing to rest. Id.

### B. Medical Records

On December 6, 2017, Adames was evaluated by Dr. Ifeanyi Oguagha as part of the intake process with WeCARE.[1] R. 217-50. Dr. Oguagha recorded that Adames walked with a normal gait, possessed "4/5 strength" in his right arm with a "[range of motion] of 150 degrees, limited by pain and stiffness." R. 242. Dr. Oguagha noted that Adames was limited in his ability to reach, as well as manipulate objects, and that he had postural limitations including repetitive bending, crouching, and stooping. R. 244. Dr. Oguagha also noted a non-exertional limitation with regard to tolerating stress, adapting to change, and regulating emotions and mood. R. 245. Dr. Oguagha recommended work accommodations including use of a cart to transport material, and the elimination of lifting, pushing, pulling, carrying, stooping, bending, and reaching. R. 246. Dr. Oguagha noted that accommodation was provided to Adames in the form of assistance with completing his application and forms, but that he could not "ascertain why he would have difficulty writing as his physical exam did not show an[y] reason why he could not physically be able to write." R. 249. Ultimately, Dr. Oguagha concluded that Adames was temporarily unable to work pending further medical evaluation and care. R. 218-19, 249-50.

On April 14, 2018, Adames was treated at the emergency department of NYU Langone Brooklyn for acute lower back pain. R. 338-39. He was described as having a "steady gait" with no mention of a cane. R. 340. Records indicate his symptoms improved with pain medication, and he was discharged that same day, appearing well and in no acute distress. R. 341.

On May 9, 2018, Adames was seen in the Radiology Department of NYU Langone Brooklyn. R. 381. He was diagnosed with dislocation of his right shoulder. R. 382.

---

[1] WeCARE is a vocational rehabilitation program for adults with medical/mental health barriers to employment. WeCARE – Bronx and Queens, Fedcap, Inc., https://fedcapinc.org/wecare-iii-rehabilitation-and-employment-ny/ (last visited September 15, 2022).

4

On August 16, 2018, Adames was again treated for lower back pain at the emergency department of NYU Langone Brooklyn. R. 412-13. His symptoms improved with pain medication, and he was discharged the same day. R. 414. Records from this visit state that he "[w]alks with cane at baseline." Id.

### C. Medical Opinions

#### 1. Ram Ravi, MD

On March 17, 2018, Adames was examined by Dr. Ravi. R. 307-10. Dr. Ravi noted Adames had an antalgic gait and used a cane to alleviate pain and assist with balance and weightbearing when walking and standing. R. 308. Dr. Ravi stated that Adames's use of a cane "is medically necessary." Id. Dr. Ravi performed a musculoskeletal exam, which demonstrated Adames possessed a restricted range of motion in his cervical spine, knees, and ankles, and that he was unable to raise his right arm more than 70 degrees. R. 309. Dr. Ravi diagnosed Adames with back pain, right shoulder pain, decreased vision bilaterally, and stroke. R. 310. He opined that while Adames had no limitations to sitting, he had moderate limitations to standing, walking, pushing, pulling, lifting, and carrying. Id. Dr. Ravi stated that Adames should avoid bending, and that he was limited from activities requiring fine manipulation due to weakness on his right side because of his stroke and pain. Id.

#### 2. Joseph Sturm, MD

On April 2, 2018, Adames was examined by Dr. Sturm. R. 315-18. Dr. Sturm noted Adames had a history of nonspecific headaches and visual difficulties, and conducted an eye exam. R. 315. Dr. Sturm reported that while Adames's vision was myopic, he possessed fairly good visual acuity with correction. Id.

5

### 3. L. Samuel, MD

On May 9, 2018, medical consultant Dr. Samuel conducted a review of Adames's medical records, including those produced by Drs. Ravi and Sturm. R. 66-70. Dr. Samuel found that Adames was experiencing residual symptoms of his stroke in 2013, including right-sided weakness, use of a cane, an antalgic gait, and inability to walk on heels and toes. R. 67. Dr. Samuel found that Adames had exertional limitations, including only occasionally lifting ten pounds, and being able to stand or walk for only two hours. Id. Dr. Samuel also found that Adames had postural limitations, but that he could "occasionally" climb ramps, stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl. R. 67-68. Dr. Samuel found that Adames had no manipulative or visual limitations. R. 68.

## IV. The ALJ's Decision

On December 27, 2019, the ALJ denied Adames's SSI application. R. 10-22. The ALJ identified the administrative and procedural history, the applicable law, and his findings of fact and conclusions of law. Id.

At step one, the ALJ determined Adames had not engaged in any substantial gainful activity since his application date, January 23, 2018. R. 12. At step two, he found that Adames had three severe impairments: late nervous system effects due to a history of traumatic brain injury, mild to moderate degenerative changes of the lumbar spine, and mild dysfunction of the right shoulder. Id. At step three, he determined that Adames's impairments or any combination thereof did not meet or medically equal the severity of a listed impairment in the applicable regulations ("listings"). R. 15; see 20 C.F.R. Pts. 416.920(d), 416.925, 416.926.

The ALJ found the requirements of listings 1.02 (dysfunction of major joints) and 1.04 (disorders of the spine) were not met or medically equaled. R. 16. The ALJ observed that "there

are no correlated indications from the medical records that the claimant could not ambulate effectively, had nerve root impingement with listing-level motor deficits, or could not effectively perform fine and gross movements." Id.

The ALJ established Adames's residual functional capacity ("RFC"). Id. He found that Adames possessed the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 416.967(a). At step four, the ALJ found that Adames had no past relevant work. R. 21.

At step five, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Adames could perform. Id. In reaching this conclusion, the ALJ relied upon the medical-vocational guidelines, which direct a finding of "not disabled" for a person of Adames's age with a high school education and no previous work experience. 20 C.F.R. Pt. 404, subpt. P, app'x 2 § 201.27. Because the ALJ found Adames was able to engage in substantially gainful activity, he concluded that Adames was not disabled through the applicable period and was not entitled to benefits. R. 22.

## V.     The Appeals Council's Determination

Following the ALJ's unfavorable decision, Adames requested that the Appeals Council review the decision. See R. 27. On September 18, 2020, the Appeals Council denied his request for review, making the ALJ's decision final. R. 1.

## DISCUSSION

## I.     Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error, or it is not supported by

7

substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Therefore, if sufficient evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (emphasis in original) (citations and internal quotation marks omitted)). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II. Definition of Disability

A claimant is disabled under the Act if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D). A claimant will be found to be disabled only if their "impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." Id. § 1382c(a)(3)(B).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 416.920. The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. See id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof as to steps one, two, three, and four; the Commissioner bears the burden as to step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (citation omitted).

9

**III.     Analysis**

Adames argues that the ALJ failed to properly consider the extent of his shoulder impairment, improperly rejected his testimony at the hearing, and erred in finding that his use of a cane was not medically necessary. Pl. Br. at 8, 12, 14.

**A. Adames's Shoulder Impairment**

Adames argues that substantial evidence supported a finding that he is unable to reach overhead, and that coupled with his limitation to sedentary work, a vocational expert should have been consulted to determine if sufficient appropriate jobs existed in the national economy. In making this argument, Adames relies almost exclusively on the report produced by Dr. Ravi.

As an initial matter, Dr. Ravi did not find that Adames had an overhead reaching limitation. See R. 310. And while Dr. Ravi's report did describe significant limitations to Adames's shoulder mobility, the ALJ correctly observed that this description was "inconsistent with the totality of evidence in the record." R. 17. For example, just three months before Dr. Ravi's examination, Dr. Oguagha recorded a right arm range of motion of 150 degrees, greater than the 120 degrees Dr. Ravi reported for Adames's (unaffected) left arm, and more than double the 70 degrees reported for his right. R. 242. In addition, records from Adames's emergency department visits in April, May, and August of 2018, as well as June of 2019, all contain reports of normal musculoskeletal conditions. R. 340 ("Motor 5/5 throughout"); R. 414, 464, 472. These reports contain no mention of the near total limitation claimed by Adames (e.g., the inability to write his own name or raise his hand).

Adames argues that the ALJ "ignored" Dr. Ravi's objective measure of his shoulder mobility and engaged in "impermissible cherry-picking . . . to justify his decision." While it is true that the ALJ's opinion does not explicitly reference the numerical range of motion measure

10

in Dr. Ravi's report, it does analyze that report in detail and, as described above, thoroughly catalogues the other medical evidence inconsistent with that report, including the objective range of motion measures reported by Dr. Oguagha. R. 17-18; see Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("[E]vidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Finally, cases in other districts demonstrate that overhead reaching is not generally a feature of sedentary work. See Jamil D. v. Kijakazi, No. 21-cv-464 (GMH), 2022 WL 910334, at *19 (D.D.C. March 29, 2022) ("[S]edentary work does not require overhead reaching.") (gathering cases); cf. Gaviria v. Berryhill, No. 17-cv-6502 (KHP), 2019 WL 926112, at *6 (S.D.N.Y. Feb. 26, 2019) (noting with approval the ALJ's finding that "even if Plaintiff were limited to an RFC of sedentary work with no overhead reaching, there remained a number of jobs in the national economy that Plaintiff could perform."); Sova v. Colvin, No. 7:13-cv-0570, 2014 WL 4744675, at *8 (N.D.N.Y. Sept. 23, 2014) ("[In] sedentary work . . . reaching overhead is rare."). While these cases are not binding on this Court, they lend further support to the ALJ's RFC determination.

There is significant material in the record indicating Adames is able to reach overhead, and therefore the ALJ's RFC determination that did not include an overhead reaching limitation was supported by substantial evidence.

I note, however, that the ALJ concluded his discussion of Dr. Ravi's analysis by stating "only to the extent consistent with the residual functional capacity does the undersigned find the opinion [] persuasive." R. 20. This is improper. This Court, and many others, have criticized ALJ

decisions that "[d]etermin[e] the RFC first and then measur[e] the claimant's credibility by that yardstick" as "illogical" and "prejudicial to the claimant." Cruz v. Colvin, No. 12-cv-7346 (PAC)(AJP), 2013 WL 3333040, at *15-16 (July 2, 2013) (citing cases), adopted, 2014 WL 774966 (S.D.N.Y. Feb. 21, 2014). If, as the Commissioner argues, the ALJ was merely using RFC as a semantic device to indicate which portions of Dr. Ravi's opinion he found persuasive, such phrasing is ill-advised. See Perozzi v. Berryhill, 287 F. Supp. 3d 471, 489-90 (S.D.N.Y. 2018) ("Such reasoning is flawed . . . .") (gathering cases from 2013 onward).

A remand, however, is not called for on this ground. The ALJ gave ample explanation for disregarding Dr. Ravi's measure of Adames's shoulder mobility in making the RFC determination, and I conclude that the ALJ's finding is supported by substantial evidence.

**B. Adames's Hearing Testimony**

Adames argues that the ALJ improperly evaluated his testimony at the hearing, specifically his claims of debilitating pain and functional deficits relating to his shoulder and back impairments.

It is the ALJ's role to evaluate a claimant's credibility and to decide whether to discredit a claimant's subjective estimate of the degree of his impairment. Tejada, 167 F.3d at 775-76; see also 20 C.F.R. § 416.929(b) (dictating than an individual's subjective complaints alone do not constitute conclusive evidence of a disability). In making a credibility determination, if a claimant alleges symptoms of greater severity than established by the objective medical findings, "[t]he ALJ's decision must 'contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" Watson v. Berryhill, 732 F. App'x 48, 52 (2d Cir. 2018) (quoting SSR

96-7p, 1996 WL 374186, at *2). "[C]ourts must 'defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence.'" Dorta v. Saul, 19-cv-2215 (JGK)(RWL), 2020 WL 6269833, at *8 (S.D.N.Y. October 26, 2020) (quoting Watson).

The ALJ's decision made clear that his discounting of Adames's testimony was proper because "such limitation is inconsistent with the totality of evidence in the record." R. 17. The ALJ cited imaging of Adames's spine that demonstrated only mild loss of intervertebral disc height and noted that contemporaneous physical examinations reflected "a normal and steady gait, no acute distress, and 5/5 strength throughout". Id.; see R. 340, 401. The ALJ also cited imaging of Adames's shoulder indicating residual damage from his 2013 accident, but correctly observed that "the record frequently reflects normal musculoskeletal ranges of motion, normal muscle tone, and good grip strength . . . which would be unexpected of someone with the claimant's degree of purported limitation." Id.; see R. 385. Finally, the ALJ notes that Adames's emergency department visits yielded a conservative course of treatment. Id.

The ALJ makes numerous citations to the record that serve to make clear to Adames and the Court both the weight given to Adames's testimony and the reasons for that weight. R. 17-18; see Watson, 732 F. App'x at 52. Therefore, the ALJ's decision to discount Adames's hearing testimony was supported by substantial evidence and free from legal error.

### C. Adames's Use of a Cane

Adames argues that the ALJ erred in not finding his use of a cane to be medically necessary. He also argues that the ALJ erred by not having a vocational expert testify regarding the availability of jobs for an individual with a sedentary RFC who walks with a cane.

Adames's latter contention is unsupported by the SSR he cites. SSR 96-9p (which states that "it *may* be especially useful to consult a vocational resource" where a claimant with a

13

sedentary RFC uses a hand-held assistive device) (emphasis added); see Meade v. Astrue, No. 12-cv-2211 (AKH), 2013 WL 8112740, at *5 (S.D.N.Y. Sept. 25, 2013) ("Nothing in the language of [SSR 96-9p] requires an ALJ to consult a vocational resource rather than applying the Grid.").

As for Adames's medical necessity argument, it is unclear what reversible error is being alleged. Adames states his "use of a cane was supported by CE Dr. Ravi's assessment, the medical records, and plaintiff's testimony." Pl. Br. at 15. While the ALJ's statement that "there is nothing to establish medical necessity for a cane" is plainly erroneous (because Dr. Ravi's report states that it "is medically necessary")[2], the substantial evidence standard allows for remand only where the ALJ's findings are unsupported, not where there is also support for an alternative finding. R. 17, 30; See Brault, 683 F.3d at 448. Here, the ALJ's RFC determination of a full range of sedentary work is entirely consistent with the medical records, including evidence that Adames walked with a cane, regardless of whether or not the cane was "medically necessary." The ALJ cites to treatment notes describing Adames as having a "steady gait" and "ambulating in no distress" with no reference to a cane, as well as notes that describe him as using a cane but walking with a "normal and steady gait." R. 18-20; see R. 340-41, 414.

Furthermore, Adames provides no support for the implication that his use of a cane is somehow irreconcilable with the ALJ's ultimate decision. To the contrary, courts in this district have found use of a cane to be compatible with sedentary work as well as higher RFC classifications. See, e.g., Marrero v. Comm'r of Soc. Sec., No. 20-cv-10241 (KHP), 2022 WL

---

[2] The physical examination notes from Dr. Ravi's report read "Cane to stand. Cane for pain, weightbearing, and balance always. Prescribed by a doctor. It is medically necessary." R. 308. It is unclear whether Dr. Ravi is offering a medical opinion or simply repeating information self-reported by Adames. Notably, neither Dr. Ravi's diagnosis nor medical source statement, which conclude his report and describe Adames's limitations, makes mention of a cane. R. 310.

3355266, at *8 (S.D.N.Y. Aug. 15, 2022) ("[U]se of a cane on occasion is not inconsistent with sedentary work."); Bonilla-Bukhari v. Berryhill, 357 F. Supp. 3d 341 (S.D.N.Y. 2019) (upholding an RFC determination of light work with limitations where the claimant required a cane at all times); see also Carroll v. Colvin, No. 13-cv-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) ("[S]everal courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing."). Thus, even if the ALJ had agreed that use of a cane was a necessary limitation, his RFC determination (and the subsequent finding of no disability required by § 201.27 of appendix 2) was still supported by substantial evidence, as outlined above.

## CONCLUSION

Adames's motion is DENIED, and the Commissioner's motion is GRANTED. The action is DISMISSED with prejudice. The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 27 and 29.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:   September 27, 2022
         New York, New York